IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DENISE ANN JOHNSON, et al., | \* |
| Plaintiffs, | \* |
| v. | \* |
| | \*   Civil Action No.: RDB-15-3317 |
| JEFFERSON B. SESSIONS, III, Attorney General of the United States, et al., | \* |
| Defendants. | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Denise Ann Johnson ("Johnson") and John Andoh ("Andoh") (collectively, "plaintiffs") have filed a Complaint in this Court against the Attorney General of the United States, the Secretary of the United States Department of Homeland Security, the Director of the United States Citizenship and Immigration Services ("USCIS"), and the Baltimore Field Director of USCIS.[1]  Plaintiffs challenge decisions by United States Citizenship and Immigration Services and the Board of Immigration Appeals ("BIA") relating to USCIS's denial of Johnson's I-130 Petition for Alien Relative (the "Petition") for her husband Andoh, a Ghanian national.  (ECF No. 65.)  Specifically, plaintiffs allege that USCIS and the BIA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, in the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute defendants Jefferson B. Sessions, III, Attorney General of the United States, John F. Kelly, Secretary of Homeland Security, and Lori L. Scialabba, Acting Director of United States Citizenship and Immigration Services for defendants Lynch, Johnson, and Rodriguez.  It appears that Conrad Zaragoza, USCIS Baltimore Field Director, remains in his position.  Accordingly, this case shall be re-captioned as "Johnson, et al. v. Sessions, et al."

1

processing and review of Johnson's Petition. (*Id.*) Plaintiffs seek relief under the APA, as well as under the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.*)

Now pending before this Court is defendants Jefferson B. Sessions, III, John F. Kelly, Lori L. Scialabba, and Conrad Zaragoza's (collectively, "defendants") Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ("Defendants' Motion") (ECF No. 68.) The parties' submissions have been reviewed, and no hearing is necessary.[2] *See* Loc. R. 105.6 (D. Md. 2016.) For the reasons stated below, Defendants' Motion (ECF No. 68) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to plaintiffs' claims under the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants' Motion is DENIED as to the claims of plaintiff Andoh and plaintiff Johnson brought pursuant to the APA.

## BACKGROUND

The pending case began as a petition for review before the United States Court of Appeals for the Fourth Circuit. (ECF No. 1.) The Certified Administrative Record before the Fourth Circuit was docketed in this case.[3] (ECF No. 10.) On October 29, 2015, the Fourth Circuit transferred petitioner Johnson's case to this Court in the interest of justice pursuant to 28 U.S.C. § 1631. (ECF No. 57.) Following a teleconference with the Court,

---

[2] Also pending in this case is Plaintiffs' Motion for an Enlargement of Time to Respond (ECF No. 69). In light of the result reached herein, this Motion is DENIED AS MOOT.

[3] For purposes of clarity, the Certified Administrative Record will be referred to herein as "A.R."

which granted Johnson's request for an extension of time, plaintiffs filed their Complaint on September 7, 2016. (ECF Nos. 64, 65.)

Plaintiff Andoh is a native and citizen of Ghana who entered the United States on or about October 4, 2004, using a nonimmigrant visa. (A.R. at 27.) Andoh married plaintiff Johnson, a United States citizen, on March 9, 2006, and just over one month later, on April 30, 2006, Johnson filed an initial I-130 Petition to establish Andoh as her spouse for visa purposes. (*Id.* at 16.) USCIS denied the petition on December 13, 2006 after plaintiffs terminated their interview with USCIS officers. (*Id.* at 17.) Following the denial of the first I-130 Petition, Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Andoh by filing a Notice to Appear ("NTA") in Immigration Court on January 17, 2007. (*Id.* at 573.) The NTA alleged that Andoh was removable from the United States based on the fact that he overstayed his nonimmigrant visa. (*Id.* at 448-49.) On February 8, 2007, Andoh conceded in immigration court that he was removable as charged. (*Id.* at 448-49, 573.) Andoh's counsel also indicated to the immigration judge that Johnson intended to file a second I-130 Petition on Andoh's behalf, and counsel therefore requested a continuance of the case to allow for processing of the petition. (*Id.* at 450-53.)

Johnson filed a second I-130 several weeks later, on February 21, 2007. (A.R. at 26.) A USCIS officer interviewed Johnson and Andoh on September 14, 2007. (*Id.* at 27.) Finding that plaintiffs had failed to present clear and convincing evidence that their marriage was bona fide, USCIS conducted a second interview of plaintiffs on August 13, 2008. (*Id.*) It does not appear that USCIS took any further action with respect to the Petition at that time.

Nearly three years later, on the morning of August 8, 2011 at approximately 5:00 a.m., USCIS officers conducted an unannounced investigation of the residence which Andoh and Johnson purportedly shared. (A.R. at 34.) When the officers arrived at the residence, at approximately 5:00 a.m., Andoh claimed that no one was in the apartment other than himself and his roommate, George. (*Id.*) Upon examining the apartment, however, USCIS officers encountered a woman "hiding in the apartment's bathroom." (*Id.*) Andoh told the officers that the woman was the wife of his roommate, and that her name was "Deborah." (*Id.*) The officers further reported that When the woman came out of the bathroom, she led the officers to the bedroom where she alleged she was staying (a bedroom not occupied by Andoh). (*Id.*) After failing to find her identification in that bedroom, she then proceeded to Andoh's bedroom, where she pulled her purse from the closet and presented two Ghanaian passports bearing the name Doris Baido-Ageyekum. (*Id.*) The woman then admitted that her name is Doris, and she stated that she and Andoh had been living together in the apartment alone for the past eight months. (*Id.*)

According to the USCIS agents on the scene, Andoh whispered something to Doris, who then immediately recanted her prior statement and claimed that Johnson lived at the residence as well. (A.R. at 34.) Doris further claimed that she had been sleeping on the couch for the past eight months, but USCIS officers did not observe any blankets or pillows on the couch, despite the fact that the visit occurred at 5 a.m. (*Id.*) When asked about Andoh's claim that she was married to George, Doris refused to answer. (*Id.*) Likewise, when asked who resided in the apartment, Andoh refused to respond and indicated that he wished to remain silent. (*Id.* at 31.) At another point during the visit, however, Andoh

4

indicated to the officers that Doris slept in the second bedroom with Andoh's brother, George. (*Id.*) Andoh later stated that George was not his brother, but a family friend. (*Id.*)

On December 16, 2011—over four months after the early morning investigation was conducted and nearly five years after the filing of the second I-130 Petition—USCIS issued a Notice of Intent to Deny ("NOID") Johnson's petition based on a finding that Johnson and Andoh's petition was based on "a fraudulent or 'sham' marriage, entered into for the sole purpose of procuring the beneficiary's admission as an immigrant." (A.R. at 31.) Plaintiffs filed a response to the NOID on January 13, 2012, disputing USCIS's findings and attempting to explain several of the factual discrepancies identified by USCIS. (*Id.* at 37.)

On March 26, 2012—over five years after the filing of the second I-130 Petition and nearly six years after the date of Johnson and Andoh's marriage—USCIS denied the petition. (A.R. at 124.) USCIS's denial was set forth in a six page letter containing a three page narrative of the reasons for USCIS's determination that Johnson and Andoh's marriage was a sham. (*Id.* at 126-28.)

Plaintiffs filed a timely Notice of Appeal[4] of USCIS's decision denying the second I-130 Petition on April 25, 2012. (A.R. at 327.) The Notice of Appeal identified the case as "In the Matter of / Petitioner (I-130) Denise Ann Johnson / Beneficiary John Yaw Andoh / A# 096778846." (*Id.*) In handwritten text submitted by counsel, the Notice of Appeal to the Board of Immigration Appeals states as the basis for the appeal that:

> The marriage entered into by I-130 petitioner Denise Johnson and her husband John Andoh was not for the purpose of conferring immigration benefits and evading immigration laws. In essence, the couple did not enter

---

[4] The Notice of Appeal Form, EOIR-29, states that "[i]f the factual or legal basis for the appeal is not sufficiently described, the appeal may be summarily dismissed." (A.R. at 327.)

5

>into a sham marriage. The documentation submitted by the couple to prove a bona fide marriage complied with the controlling regulation, 8 C.F.R. § 204.2(a)(1)(i)(B), and the I-130 petition instructions as to the documents to submit to establish a bona fide marriage.

(*Id.*)  The Notice of Entry of Appearance (Form EOIR-27) filed by counsel stated that counsel was appearing on behalf of Andoh; it did not mention expressly that counsel also represented petitioner Johnson. (*Id.* at 328.) In an accompanying letter, counsel for Johnson and Andoh stated that a "legal brief will follow the filing of this appeal." (A.R. at 326.) The letter's subject line stated: "Re: Appeal Of USCIS March 26, 2012 Decision Regarding I-130 Petition Filed by Denise Johnson For Her Beneficiary Husband, John Andoh, A# 096 778 846." (*Id.*)

On May 21, 2012, plaintiffs' counsel filed a request for an extension of time to submit a brief in support of the appeal, indicating that counsel was undergoing hip replacement surgery and would be out of the office for several weeks. (A.R. at 338.) Counsel requested an additional extension of time to file the brief on July 13, 2012. (*Id.* at 341.) Ultimately, however, no timely brief was filed.

No brief having been filed in support of the appeal, the BIA issued its decision on November 23, 2012. (A.R. at 306.) The BIA dismissed the appeal for lack of jurisdiction because the "Notice of Appeal…Form EOIR-29, in this case is neither signed by the petitioner nor accompanied by a Notice of Entry of Appearance as Attorney or Representative before the Board, Form EOIR-27." (A.R. at 306.) Thus, the BIA noted, "[i]t is not clear from the record that the appeal was initiated by the petitioner or her authorized representative." (*Id.*) As an alternative basis for its decision, the BIA stated that "[e]ven if the appeal had been properly filed, the petitioner does not meaningfully identify the reasons

6

for the appeal on the Notice of Appeal or any other paper filed with it." (*Id.*)  The BIA further noted that while "petitioner indicated on the Notice of Appeal that she intended to file a separate written brief or statement, no such submission has been received." (*Id.*)[5]

On December 21, 2012, petitioner Johnson filed a Motion to Reopen and/or for Reconsideration before the BIA.  (A.R. at 307.)  The Motion included a new notice of appearance, indicating that counsel represented Johnson, and a brief addressing the inconsistencies identified by USCIS in its Denial of the Petition.  The Motion further argued that the Notice of Appeal sufficiently put the BIA on notice of the basis for the appeal and asserted that counsel's surgery and extended recuperation made re-opening the case appropriate.  (*Id.* at 307-24.)  By Order dated September 6, 2013, the BIA denied the Motion on the basis that the Motion failed to identify errors of fact or law in the prior BIA decision, that the new evidence produced had been previously available (and, thus, inappropriate for review on appeal), and that the failure to file a brief in the six months between counsel's request for an extension of time and USCIS's decision was not excused.  (ECF No. 17-3 at 4-5.)

On October 3, 2013, plaintiffs filed a petition for review of the BIA's September 6, 2013 decision before the Fourth Circuit.  (ECF No. 1.)  As noted above, on October 29, 2015, the Fourth Circuit transferred petitioner Johnson's case to this Court in the interest of justice pursuant to 28 U.S.C. § 1631.  (ECF No. 57.)  Following a teleconference with the

---

[5] Following the denial of the second I-130 petition, Andoh appeared in Immigration Court on November 29, 2012, at which time the Immigration Judge denied Andoh's request for a further continuance and granted Andoh's request for voluntary departure.  (A.R. at 435.)  The record reflects that Andoh appealed the denial of his request for a continuance.  The board dismissed his appeal on August 8, 2014.  This decision was appealed to the Fourth Circuit, which, on October 29, 2015, "voted to deny petitioner Andoh's motion for a continuance and/or to reopen the case." (ECF No. 57.)  While this Order suggests that Andoh has departed the United States, his status and/or location is not specified in the papers before this Court.

7

Court, plaintiffs filed a three-count Complaint on September 7, 2016. (ECF No. 65.) Defendants now seek to dismiss plaintiffs' Complaint. (ECF No. 68.)

## STANDARDS OF REVIEW

### I. Motion to Dismiss Pursuant to Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the

8

proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dept. of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

**II.   Motion to Dismiss Pursuant to Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

9

F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## DISCUSSION

### I. Plaintiffs' Claims Under the Mandamus Act, 28 U.S.C. § 1361

Defendants argue that plaintiffs' claims under the Mandamus Act, 28 U.S.C. § 1361, should be dismissed because mandamus relief is not an appropriate remedy in this matter. (ECF No. 68-1 at 13.) Specifically, defendants argue that the Mandamus Act may only be used to compel the performance of ministerial, nondiscretionary duties—distinct from the types of discretionary or judgment-laden decisions made by United States Citizenship and Immigration Services and the Board of Immigration Appeals in this case. (*Id.* at 14.)

Plaintiffs argue in opposition that "[t]he imposition by USCIS of a mandatory adjudication fee created a non-discretionary duty on USCIS to **lawfully** decide the subject I-130 petition **in conformance with the controlling federal regulation, 8 C.F.R. §204.2(a)(1)(iii)(B), and case law, <u>Matter of Phillis</u>, 15 I&N Dec. 385 (BIA 1975)**." (ECF No. 72 at 4) (emphasis in original.)

The Mandamus Act gives district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. It is well established that mandamus is an "extraordinary remedy," and in seeking mandamus relief, "petitioners must show that they lack adequate alternative means to obtain the relief they seek." *Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). Traditionally, mandamus relief is only available to compel the performance of a "ministerial duty"; it is not available to "direct the exercise of judgment or discretion in a particular way." *Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 218 (1930); *see also Plato v. Roudebush*, 397 F. Supp. 1295, 1304-05 (D. Md. 1975); *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) ("[T]he Mandamus Act requires that the United States owe a clear, nondiscretionary duty to the plaintiff."). *See also Watkins v. Napolitano*, RWT-11-2257, 2012 WL 4069763 at *3 (D. Md. Sept. 14, 2012).

While plaintiffs are correct that USCIS was required to render a decision on plaintiffs' I-130 Petition, there is no dispute that USCIS has done so and thereby carried out its *ministerial obligations*. The real target of plaintiffs' Mandamus claims, their brief makes clear, is the *discretionary decision* which USCIS reached. (ECF No. 72 at 4-5.) As the Mandamus Act may only be used to compel performance of ministerial duties and not to "direct the exercise of judgment or discretion in a particular way," plaintiffs' claims under the Mandamus Act, 28 U.S.C. § 1361, must be DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. Plaintiffs' Claims Under the Declaratory Judgment Act, 28 U.S.C. § 2201

Defendants argue that plaintiffs' claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, should be dismissed because this statute "does not provide an independent basis for this Court to exercise jurisdiction; it only provides for a particular remedy when

11

jurisdiction otherwise exists." (ECF No. 68-1 at 14.) Defendants further argue that "the United States may only be sued where it has waived sovereign immunity," which it has not done under the Declaratory Judgment Act. (*Id.*)

Plaintiffs argue that the Declaratory Judgment Act "has a built in jurisdictional clause" which allows this Court to exercise jurisdiction over these claims in the instant case. (ECF No. 72 at 5.) Plaintiffs do not address defendants' arguments regarding sovereign immunity.

The federal Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a). Thus, this Court considers three factors in determining whether to grant declaratory relief:

> (1) the complaint must allege an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;
> (2) the court must possess an independent basis for jurisdiction over the parties; and
> (3) the court must decide whether to exercise its discretion to determine or dismiss the action.

*Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.,* DKC–06–3177, 2010 WL 1328538, at *6 (D. Md. March 29, 2010). *See A.L. Mechling Barge Lines v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961) (whether to grant declaratory relief is a matter of the Court's discretion); *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980) (same).

As this Court recently explained, "in determining whether to exercise its discretion to grant declaratory relief, the Court should consider "(1) whether the judgment will serve a

useful purpose in clarifying the legal relations in issue; or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *White Marlin Open, Inc. v. Heasley*, RDB-16-3105, 2017 WL 467733, at *3 (D. Md. Feb. 3, 2017) (quoting *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, PWG-09-1201, 2010 WL 2367390, at *4 (D. Md. June 9, 2010), *aff'd,* 442 F. App'x 66 (4th Cir. 2011)).

In this case, it is apparent that the United States has not waived sovereign immunity as to plaintiffs' declaratory judgment claims. *See Worsham v. U.S. Dep't of the Treasury*, ELH-12-2635, 2013 WL 5274358, at *7 (D. Md. Sept. 17, 2013) ("The Declaratory Judgment Act 'plainly does not operate as an express waiver of sovereign immunity ... because it 'neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief.") (internal citations omitted). *See also Goldstein v. Moatz,* 364 F.3d 205, 219 (4th Cir. 2004). Accordingly, plaintiffs' claims under the Declaratory Judgment act must be DISMISSED on this basis.[6]

### III. Plaintiff Andoh is a Proper Party to this Case

Defendants move to dismiss plaintiff Andoh, the beneficiary of plaintiff Johnson's I-130 petition, arguing that only the petitioner has standing to challenge USCIS and the BIA's denial thereof. (ECF No. 68-1 at 12-13.) Defendants note that the Fourth Circuit dismissed Andoh's own appeal of the BIA's decision denying his request for a continuance and/or to reopen the case." (*Id.*) In their reply brief, defendants point in particular to a decision of the

---

[6] Even if the claims were not barred on the basis of sovereign immunity, this Court, in the discretion accorded to it under the Declaratory Judgment Act, would decline to exercise jurisdiction over plaintiffs' declaratory claims. This Court would do so because a declaratory judgment in this matter would be duplicative of plaintiffs' claims under the Administrative Procedures Act and, therefore, would not "serve a useful purpose in clarifying the legal relations in issue." *White Marlin Open*, 2017 WL 467733, at *3.

13

United States District Court for the Eastern District of New York, in which that court, citing cases from the Second and Third Circuits, concluded that only the petitioner—and not the beneficiary—could challenge the denial of a visa petition. *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 350–51 (E.D.N.Y. 2010).

Plaintiffs argue in opposition that Andoh, as the beneficiary of the I-130 Petition, is within the "zone of interests" to be protected under the Administrative Procedure Act and, thus, has standing in the pending action. (ECF No. 72 at 1-2.) In support of their position, plaintiffs rely on the Fourth Circuit's statement that the beneficiary of a visa petition is "in the 'zone of interest' of the statute and had standing to challenge the denial of his petition." *Taneja v. Smith*, 795 F.2d 355, 358 (4th Cir. 1986).

While some courts have held that the beneficiary of a visa petition does not have standing to challenge a denial of that petition, the relevant Fourth Circuit authority provides that "the beneficiary of a visa petition is "in the 'zone of interest' of the statute and ha[s] standing to challenge the denial of his petition." *Taneja v. Smith*, 795 F.2d 355, 358 (4th Cir. 1986). *See also Akinjiola v. Holder*, ELH-12-2597, 2014 WL 641702, at *6, n. 7 (D. Md. Feb. 14, 2014) (citing *Taneja*).[7] *But see Yan Won Liao*, 691 F. Supp. 2d at 350–51 (beneficiary does not have standing to challenge denial of visa petition); *Vemuri v. Napolitano*, 845 F. Supp. 2d 125, 133-34 (D.D.C. 2012) (same). Accordingly, Defendants' Motion is DENIED as to the dismissal of plaintiff Andoh.

---

[7] The propriety of this result is reinforced by the nature of the petition at issue in this case. That is, unlike the I-140 petition on behalf of a non-citizen worker in *Vemuri* (or even the sixth-preference I-130 petition in *Taneja*), the petition in this case was filed by Andoh's wife and was assessed (and denied) on the basis of the *bona fides* of their shared, marital relationship. While, to be sure, the petitioner is indispensable and must partake in the challenge to the agency decision(s), there does not appear to be any persuasive reason to exclude the individual who participated in the initial application from a challenge to the denial thereof.

14

## IV. Plaintiffs State a Plausible Claim for Relief Under the Administrative Procedure Act

Defendants also move to dismiss plaintiffs' claims under the Administrative Procedure Act on the basis that plaintiffs fail to state a plausible claim for relief. (ECF No. 68-1 at 15-22.) In their reply brief, defendants similarly assert that "the Complaint is entirely silent as to why any of USCIS's specific findings were incorrect." (ECF No. 73 at 4.)

Plaintiffs argue in opposition that defendants misstate the applicable legal standard at the motion to dismiss stage pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 72 at 5-6.) Instead, defendants' arguments appear framed under the standard for a motion for judgment on the pleadings. (*Id.*)

> As this Court explained in *Akinjiola*:
>
> The APA provides the statutory basis for a court to review a final agency action. *See* 5 U.S.C. § 702; *Lee v. U.S. Citizenship & Immigration Servs.,* 592 F.3d 612, 619 (4th Cir. 2010). Notably, **"claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record...."** *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.,* 524 F.Supp.2d 642, 659 (D. Md. 2007) (citing *Citizens for the Scenic Severn River Bridge, Inc. v. Skinner,* 802 F. Supp. 1325, 1332 (D. Md. 1991), *aff'd,* 1992 W L 180138, 1992 U.S. A pp. L EX IS 17466 (4th Cir. July 29, 1992)). **Thus, "such claims are properly decided on summary judgment."** *Audubon Naturalist,* 524 F.Supp.2d at 659; *see* 10B Wright and Miller, Federal Practice and Procedure § 2733 (3d ed. 2007). In this context, "review of the administrative record is primarily a legal question." *Citizens for the Scenic Severn River Bridge,* 802 F. Supp. at 1332.

*Akinjiola*, 2014 WL 641702, at *4 (emphasis added). Thus, challenges under the APA such as that now before this Court are properly adjudicated at the summary judgment stage. Dismissal of plaintiffs' Complaint under the *Twombly-Iqbal* standard, therefore, would be

15

inappropriate. Accordingly, defendants' Motion to Dismiss plaintiffs' Complaint pursuant to Rule 12(b)(6) will be DENIED.[8]

## CONCLUSION

For the reasons stated above, Defendants' Motion (ECF No. 68) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to plaintiffs' claims under the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants' Motion is DENIED as to the claims of plaintiff Andoh and plaintiff Johnson brought pursuant to the APA.

A separate Order follows.

Dated: April 3, 2017                              _____/s/_____
                                                  Richard D. Bennett
                                                  United States District Judge

---

[8] As noted by this Court in *Akinjola*, plaintiffs' claim under the Administrative Procedure Act may be adjudicated in the context of a Motion for Summary Judgment based on the administrative record and without discovery.