IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DENISE ANN JOHNSON, *et al.*, | * | |
| | * | |
| Plaintiffs, | | Civil Action No. RDB-15-3317 |
| | * | |
| v. | | |
| | * | |
| JEFFERSON B. SESSIONS, III, Attorney General of the United States, *et al.*, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On December 13, 2006, the United States Citizenship and Immigration Services ("USCIS") denied Plaintiff Denise Ann Johnson's ("Johnson") I-130 Petition to establish Plaintiff John Andoh ("Andoh"), a native and citizen of Ghana, as her spouse for visa purposes on the ground that the Petition was based on a fraudulent or sham marriage, entered into only to procure Andoh's admission into the United States. Johnson appealed the denial to the Board of Immigration Appeals ("BIA"), which denied Johnson's appeal and her subsequent Motion to Reopen and/or for Reconsideration of the Petition. On October 3, 2013, Plaintiffs Johnson and Andoh filed a petition for review of the BIA's denial of Johnson's motion,[1] which culminated into a Complaint in this Court against the Attorney General of the United States, the Secretary of the United States Department of Homeland Security, the Director of the United States Citizenship and Immigration Services, and the

---

[1] As explained in more detail below, Plaintiffs filed their petition for review in the United States Court of Appeals for the Fourth Circuit. (ECF No. 1.) On October 29, 2015, the Fourth Circuit transferred Johnson's case to this Court in the interest of justice pursuant to 28 U.S.C. § 1631. (ECF No. 57.)

1

Baltimore Field Director of USCIS (collectively, "Defendants").[2] (ECF Nos. 1, 65.) Specifically, Plaintiffs initially alleged that the USCIS and the BIA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, in the processing and review of Johnson's Petition. (ECF No. 65.) The Plaintiffs also initially sought relief under the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.*)

By Memorandum Opinion and Order (ECF Nos. 74, 75), this Court granted Defendants' Motion to Dismiss with respect to the claims under the Mandamus Act and the Declaratory Judgment Act. However, the Motion to Dismiss was denied as to the APA claim and this Court permitted the Plaintiffs' claims seeking review under the APA of USCIS' denial of the Petition and the BIA's subsequent denial of Johnson's appeal and Motion to Reopen and/or Reconsider the Petition. Subsequently, this Court granted the parties' four motions for extension of time to file Summary Judgment Motions. Currently pending before this Court are the parties' Cross-Motions for Summary Judgment. (ECF Nos. 89, 94.) The parties' submissions, in addition to the Certified Administrative Record ("A.R."), have been reviewed and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2016). For the reasons that follow, Plaintiffs' Motion for Summary Judgment (ECF No. 89) is DENIED and Defendants' Motion for Summary Judgment (ECF No. 94) is GRANTED.

## BACKGROUND

The full background of this case is set forth in this Court's previous Memorandum Opinion and is briefly summarized herein. (ECF No. 74; *Johnson v. Sessions*, No. RDB-15-

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of this Court is directed to substitute Defendant L. Francis Cissna, Director of the United States Citizenship and Immigration Services, for Lori L. Scialabba and Defendant Kirstjen M. Nielsen, Secretary of United States Department of Homeland Security, for John F. Kelly. Defendants Jefferson B. Sessions, III and Conrad Zaragoza remain in their positions.

3317, 2017 WL 1207537 (D. Md. Apr. 3, 2017).) Plaintiff John Andoh is a native and citizen of Ghana who entered the United States on or about October 4, 2004 using a nonimmigrant visa. (A.R. at 27.) Andoh married Plaintiff Denise Johnson, a United States citizen, on March 9, 2006. (*Id.* at 16.) On April 30, 2006, Johnson filed an I-130 Petition to establish Andoh as her spouse for visa purposes. (*Id.* at 16.) Ultimately, this Petition was denied by the United States Citizenship and Immigration Services ("USCIS") after Plaintiffs terminated their interview with USCIS.[3] On February 8, 2007, the Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Andoh, which were continued on the ground that Johnson intended to file a second I-130 Petition. (*Id.* at 438-39, 450-53.)

On February 21, 2007, Johnson filed a second I-130 Petition ("the Petition"). (*Id.* at 26.) On September 14, 2007, the USCIS interviewed Johnson and Andoh. (*Id.* at 27.) Finding during the interview that Plaintiffs failed to present clear and convincing evidence that their marriage was bona fide, USCIS conducted a second interview of Plaintiffs on August 13, 2008.[4] (*Id.*) The USCIS officer's notes from the second interview indicate that the officer found discrepancies between Johnson and Andoh's answers for nine of the twelve categories of questions. (*Id.* at 588-92.)

---

[3] Johnson and Andoh were interviewed twice in relation to this petition. (*Id.* at 31-32.) The first interview occurred six months after the marriage on September 5, 2006, after which the United States Citizenship and Immigration Services ("USCIS") found that Johnson and Andoh had failed to present convincing evidence to establish that they were residing in a bona fide marriage since March 9, 2006. (*Id.* at 31.) During the second, more in-depth interview on December 13, 2006, "the interviewing officer noted several indications that [Johnson's] marriage to the beneficiary [Andoh] [wa]s a fraudulent or 'sham' marriage, entered into for the sole purpose of procuring the beneficiary's admission as an immigrant." (*Id.*) The petition was denied that day, however, when Johnson chose to terminate the questioning.

[4] As explained in more detail below, under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154, the petitioner bears the burden of establishing eligibility for his or her spouse and a petition shall not be approved if the Attorney General determines by substantial and probative evidence "that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c); *Akinjiola v. Holder*, No. ELH-12-2597, 2014 WL 641702 (D. Md. Feb. 14, 2014) (citing *Matter of Phillis*, 15 I & N Dec. 383, 386 (BIA 1975)).

3

Three years after the second interview, on the morning of August 8, 2011 at approximately 5:00 a.m., USCIS officers conducted an unannounced investigation at the residence which Andoh and Johnson had indicated they shared on Riverdale Road (the "Riverdale residence").[5] (*Id.* at 34.) When the officers arrived, Andoh claimed that no one was in the apartment other than himself and his roommate. (*Id.*) Upon examining the apartment, however, officers encountered a woman "hiding in the apartment's bathroom." (*Id.*) Johnson was not present in the apartment. (*Id.*) Andoh told the officers that the woman was the wife of his roommate and her name was "Deborah." (*Id.*) When asked for her identification, however, the woman proceeded to Andoh's bedroom where she pulled her purse from a closet and presented two Ghanian passports bearing the name Doris Baido-Ageyekum. (*Id.*) The woman then admitted that her name was Doris, and she further stated that she and Andoh had been living together in the apartment alone for the past eight months. (*Id.*) According to the two USCIS officers at the residence, Andoh whispered something to Doris after she made this statement. (*Id.* at 34.) Doris then suddenly recanted her prior statement and claimed that Johnson also lived at the residence and was there the night before. (*Id.* at 34.) The notes from the onsite visit then detail an array of inconsistent statements made by Andoh and Doris.[6]

On December 16, 2011, over four months after the early morning investigation was conducted, USCIS issued a Notice of Intent to Deny ("NOID") Johnson's Petition. (*Id.* at 30-36.) The NOID summarized the procedural history of Johnson's two I-130 Petitions and

---

[5] The Defendants offer no explanation for the three-year delay between the Plaintiffs' second interview and the investigation.
[6] For instance, Andoh claimed that Doris slept in the apartment's second bedroom with her husband, George. On the other hand, Doris stated that she was divorced and slept on the couch. (A.R. at 34.)

4

listed discrepancies that USCIS asserted existed between Johnson and Andoh's testimonies during the August 13, 2008 interview. (*Id.* at 32-33.) In the NOID, the USCIS also noted that a routine background inquiry indicated that Johnson and Andoh lived in separate residences and in fact had never lived together. (*Id.* at 34.) Finally, the NOID described the above morning investigation at the Riverdale residence. (*Id.* at 34-35.) Based on all of the above, the NOID concluded that:

> It is clear by the testimony and documents submitted that you and the beneficiary have conspired to mislead USCIS as to the nature of your marriage. As USCIS records demonstrate, you and the beneficiary are not living in a bona fide marital union. You have entered into this relationship for the sole purpose of procuring an immigration benefit . . ..

(*Id.* at 35.) On January 13, 2012, Plaintiffs filed a response to the NOID, "respond[ing] to the alleged inconsistencies" in Johnson and Andoh's testimony, addressing why she was not present during the onsite visit at the Riverdale residence, and attaching various documents. (*Id.* at 37-46.) Further, Johnson asserted that separation after marriage, alone, is not a basis for declaring that Johnson and Andoh's marriage was not bona fide. (*Id.* at 37-39.)

Two months later on March 26, 2012, USCIS denied Johnson's Petition. (*Id.* at 124.) USCIS's denial was set forth in a six-page letter containing a three-page narrative addressing Johnson's response to the NOID and listing the reasons for USCIS's determination that Johnson and Andoh's marriage was a sham. (*Id.* at 126-28.) A month later on April 25, 2012, Plaintiffs filed a timely Notice of Appeal of USCIS's decision denying the second I-130 Petition. (*Id.* at 327.) The Notice of Entry of Appearance (Form EOIR-27), however, stated that counsel was only appearing on behalf of Andoh; it did not indicate that counsel also represented Johnson. (*Id.* at 328.) The Notice of Appeal Form (EOIR-29) stated that "[i]f

5

the factual or legal basis for the appeal is not sufficiently described, the appeal may be summarily dismissed." (*Id.* at 327.) In handwritten text, the Form identified the basis for the appeal as:

> The marriage entered into by I-130 petitioner Denise Johnson and her husband John Andoh was not for the purpose of conferring immigration benefits and evading immigration laws. In essence, the couple did not enter into a sham marriage. The documentation submitted by the couple to prove a bona fide marriage complied with the controlling regulation, 8 C.F.R. § 204.2(a)(1)(i)(B), and the I-130 petition instructions as to the documents to submit to establish a bona fide marriage.

(*Id.*) In a letter accompanying the Notice of Appeal and Notice of Entry of Appearance forms, counsel stated that a "legal brief will follow the filing of this appeal." (*Id.* at 326.)

Seven months later, after having granted counsel's two requests for extension of time, the BIA dismissed the appeal. (*Id.* at 306.) The BIA dismissed the appeal for lack of jurisdiction because the "Notice of Appeal, . . . Form EOIR-29, in this case is neither signed by the petitioner nor accompanied by a Notice of Entry of Appearance as Attorney or Representative before the Board, Form EOIR-27, by petitioner's counsel as required by 8 C.F.R. § 1003.3(a)(3)." (*Id.* at 306.) Thus, the BIA noted, "[i]t is not clear from the record that the appeal was initiated by the petitioner or her authorized representative." (*Id.*) Alternatively, the Board also stated that:

> Even if the appeal had been properly filed, the petitioner does not meaningfully identify the reasons for the appeal on the Notice of Appeal or any other paper filed with it. . . Although the petitioner indicated on the Notice of Appeal that she intended to file a separate written brief or statement, no such submission has been received.

(*Id.*)[7]

---

[7] Following the denial of the second I-130 petition, Andoh again appeared in Immigration Court on November 29, 2012. At that time, the Immigration Judge noted the several continuances that had been

6

On December 21, 2012, Johnson filed a Motion to Reopen and/or for Reconsideration. (*Id.* at 307.) The Motion included a new notice of appearance and a brief addressing the inconsistencies identified by USCIS, arguing that the Notice of Appeal sufficiently put the BIA on notice of the basis for the appeal, and asserting that counsel's surgery and extended recuperation made re-opening the case appropriate. (*Id.*) On September 6, 2013, the BIA denied the motion. (*Id.* at 578-79.) The BIA's Order explained that a motion to reconsider must specify the error of fact and law in the prior Board decision and be supported by pertinent authority, and Johnson did neither. (*Id.*) Further, the additional documentation Johnson sought to introduce to reopen her case and establish that her marriage was bona fide was previously available, and thus, inappropriate for review on appeal. (*Id.*) Finally, the BIA explained that reopening the case to consider counsel's untimely appeal brief was not warranted under the circumstances. (*Id.*)

On October 3, 2013, Plaintiffs filed a petition for review of the BIA's September 6, 2013 decision in the United States Court of Appeals for the Fourth Circuit. (ECF No. 1.) On October 29, 2015, the Fourth Circuit transferred Johnson's case to this Court in the interest of justice pursuant to 28 U.S.C. § 1631. (ECF No. 57.) Following a teleconference with the Court, Plaintiffs filed a three-count Complaint on September 7, 2016, asserting that USCIS and the BIA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, in the processing and review of Johnson's Petition, and further seeking relief under the

---

granted in his case since 2007, and denied Andoh's request for a further continuance while the Board heard Johnson's appeal. (A.R. at 438-39.) The court also granted Andoh a sixty-day post-hearing voluntary departure. (*Id.* at 440.) The record reflects that Andoh appealed the denial of his request for a continuance, which was dismissed on August 8, 2014. This decision was appealed to the Fourth Circuit, which, on October 29, 2015, "voted to deny petitioner Andoh's motion for a continuance and/or to reopen the case." (ECF No. 57.) While this Order suggests that Andoh has departed the United States, his status and/or location is not specified in the papers before this Court.

APA as well as under the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.*) On April 3, 2017, this Court granted in part Defendants' Motion to Dismiss, dismissing Plaintiffs' claims under the Mandamus Act and Declaratory Judgment Act, but denied the motion as to Plaintiffs' APA claims on the ground that such challenges are properly adjudicated at the summary judgment stage. (ECF Nos. 74, 75.) On September 12, 2017 and November 20, 2017, the parties filed Cross-Motions for Summary Judgment. (ECF Nos. 89, 94.)

**STANDARD OF REVIEW**

The Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, in conjunction with the federal-question jurisdiction statute, provides the statutory basis for a court to review a final agency action. Claims seeking review of an agency action under the APA "are adjudicated without a trial or discovery, on the basis of an existing administrative record . . . [and accordingly] are properly decided on summary judgment. *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007). The standard set forth in Rule 56 of the Federal Rules of Civil Procedure governing summary judgment, however, "does not apply because of the limited role of a court reviewing the administrative record." *Hospira, Inc. v. Burwell*, No. GJH-14-2662, 2014 WL 4406901, at *9 (D. Md. Sept. 5, 2014) (citing *Roberts v. United States,* 883 F. Supp. 2d 56, 62–63 (D.D.C. Mar. 23, 2012); *Kaiser Found. Hosps. v. Sebelius,* 828 F. Supp. 2d 193, 197–98 (D.D.C. 2011)). Rather, summary judgment is the mechanism by which the court decides as a matter of law whether "the administrative record permitted the agency to make the decision it did." *Id.* (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)).

## ANALYSIS

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154, a citizen of the United States may file an I-130 petition to classify an individual as his or her spouse for visa purposes. Plaintiffs challenge the decisions of the United States Citizenship and Immigration Services to deny Johnson's I-130 Petition and the Board of Immigration Appeals to deny Johnson's subsequent appeal and Motion to Reopen and/or Reconsider her Petition under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*

Under the APA, "a 'reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be [ ] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Chao v. Sessions*, No. 17-1173, 698 Fed. App'x. 751, 752 (4th Cir. Oct. 12, 2017) (quoting 5 U.S.C. § 706(2)(A)). On the other hand, a court must uphold an action if the record shows that the agency had a rational basis for the decision; the court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983); *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 396 (4th Cir. 2014). As the Fourth Circuit stated in *Ohio Valley Environmental Coalition v. Aracoma Coal Company*, 556 F.3d 177, 192 (4th Cir. 2009), "[r]eview under this standard is highly deferential, with a presumption in favor of finding the agency action valid."

Keeping these principles in mind, while reviewing an agency decision the court "'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Oregon Natural Res. Council*,

490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). An agency's decision is arbitrary and capricious if the agency:

> Relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Defenders of Wildlife*, 762 F.3d at 396 (quoting *State Farm*, 463 U.S. at 43, 103 S. Ct. 2856). Plaintiffs argue that all three decisions by the USCIS and BIA to deny the I-130 Petition, deny the appeal, and deny the Motion to Reopen and/or for Reconsideration of the Petition were unlawful. This Court reviews each action below.

I. **The United States Citizenship and Immigration Services' March 26, 2012 Denial of Johnson's I-130 Petition**

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154, the petitioner bears the burden of establishing his or her spouse as eligible for immigrant status. *Akinjiola v. Holder*, No. ELH-12-2597, 2014 WL 641702, at *6 (D. Md. Feb. 14, 2014) (citing *Matter of Phillis*, 15 I & N Dec. 383, 386 (BIA 1975)). A petition shall not be approved if it is determined by substantial and probative evidence "that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c); *see also Matter of Tawfik,* 20 I. & N. Dec. 166, 170 (BIA 1990); *Mendoza v. Secretary*, 851 F.3d 1348, 1355 (11th Cir. 2017). If the government finds substantial and probative evidence that a marriage is fraudulent, the burden shifts to the petitioner to demonstrate otherwise. *Matter of Kahy,* 19 I. & N. Dec. 803, 806–07 (BIA 1988).

The "critical inquiry" in determining whether a marriage was entered into in good faith "is 'whether the parties intended to establish a life together at the inception of the

marriage.'" *Upatcha v. Sessions*, 849 F.3d 181, 183 (4th Cir. 2017). Whether the parties so intended "is evidence by their actions after the union." *Okolie v. Collett*, No. GLR-12-663, 2012 WL 5363472 (D. Md. Oct. 26, 2012) (citing *Matter of Patel*, 19 I. & N. Dec. 774, 781-82 (BIA 1988)). Further, courts consider objective evidence such as: "(1) [d]ocumentation showing joint ownership of property; (2) [l]ease showing joint tenancy of a common residence; (3) documentation showing commingling of financial resources; . . . or [6] [a]ny other documentation which is relevant." 8 C.F.R. § 204.2(a)(1)(iii)(B); *Chhetri v. Mukasey*, Nos. 07-1358, 07-1749, 258 Fed. App'x. 594, 596 (4th Cir. Dec. 18, 2007).

This Court begins by addressing Plaintiffs' various assertions concerning what information was and was not appropriate for the USCIS to consider when denying the Petition. Plaintiffs refer to the documents listed above in 8 C.F.R. § 204.2(a)(1)(iii)(B) as "requirements" for establishing a bona fide marriage and assert that "as a result of satisfying most of the federal regulation requirements through submitted documentation, the plaintiff petitioner has complied with the controlling federal regulation to establish that she entered into a bona fide marriage." (ECF No. 89 at 19.) Plaintiffs further assert that these documents are the *only* relevant considerations:

> The federal regulations do not, however, identify testimony or an on-site ICE interview as bearing upon the establishment of a bona fide marriage . . . Alleged discrepant testimony and an ICE on site interview are irrelevant to the application of the federal regulation and caselaw [sic] standard for a petition to establish a bona fide marriage. . . . [T]his court should not give any evidentiary weight to the August 8, 2011 ICE on site interview[.]

(ECF No. 101 at 14-15.) Both of these assertions are incorrect. While the documents listed in 8 C.F.R. § 204.2(a)(1)(iii)(B) are probative of the intent to enter into bona fide marriage, "[t]here is no set formula to be applied in determining whether a marriage was entered into

11

in good faith. Indeed, USCIS may rely on many forms of evidence to reach a finding of fraudulent marriage." *Akinjiola v. Holder*, No. ELH-12-2597, 2014 WL 641702, at *9 (D. Md. Feb. 14, 2014) (internal quotations and citations omitted). Accordingly, USCIS may consider not only these documents but also other "particularly significant" evidence including "contradictions in the petitioner's statement regarding the living arrangements of the parties," "inconsistencies between the statements of the petitioner and the beneficiary," and "testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences." *Singh v. Board of Immigration Appeals*, __ Fed. App'x. __, 2018 WL 1052600, at *1 (2d Cir. Feb. 26, 2018) (quoting *Matter of Phillis*, 15 I & N Dec. 385, 386-87 (BIA 1975)). Similarly, this Court rejects Plaintiffs' argument that USCIS and this Court "should not give any evidentiary weight to the August 8, 2011 ICE on site interview" because Doris' and Andoh's statements during the interview were not given under oath.[8] (ECF No. 101 at 15.) *See Vladimirov v. Lynch*, 805 F.3d 955 (10th Cir. 2015) (considering statements during a USCIS site visit).

Turning to Johnson and Andoh's arguments that USCIS abused its discretion when it denied the Petition, Plaintiffs direct this Court to the documentation Johnson submitted in response to the Notice of Intent to Deny and her responses to the discrepancies USCIS identified during her and Andoh's interviews. In essence, rather than show that the agency acted arbitrarily, capriciously, or abused its discretion, Plaintiffs ask this Court to reweigh the evidence that was available to USCIS and reach a different conclusion. *See Singh v. Board of*

---

[8] As described above, although claims seeking judicial review of an agency action are properly decided without discovery or trial on a motion for summary judgment, Federal Rule of Civil Procedure 56 does not apply, including Rule 56(c)(2) which allows a party to object to evidence that could not be presented at trial, *i.e.* hearsay evidence.

12

*Immigration Appeals*, __ Fed. App'x. __, 2018 WL 1052600, at *2 (2d Cir. Feb. 26, 2018) (explaining that "the agency has significant discretion over the weight to be afforded to the evidence before it, and the probative value it assigned does not rise to the level of an abuse of discretion, particularly in light of the deference we afford in the context of marriage fraud").

As described above, the majority of Plaintiffs' argument is that the submission of documents—including a joint residential lease agreement, joint utility invoices, joint bank account correspondence, and various other letters and affidavits—*per se* established that Johnson and Andoh entered into a bona fide marriage. (ECF No. 89 at 18-19.) Plaintiffs also assert that in the response to the NOID, Johnson corrected the discrepancies USCIS found between the August 2008 interviews and also explained away the several red flags during the onsite interview at the Riverdale residence. Alternatively, Plaintiffs argue that *even if* Andoh had an affair or the parties had an "open marriage," "this does not extinguish the fact that they entered into a bona fide marriage by sharing a marital residence together." (*Id.* at 31.) Finally, Plaintiffs assert that the USCIS improperly introduced a new ground for denying the Petition that it did not reference in the Notice of Intent to Deny. (*Id.* at 20.) Namely, Plaintiffs note that the USCIS referred to a submitted Citibank statement that did not show that the account was in fact used to pay any shared accounts or monthly rental payments. (*Id.* (citing A.R. at 120-25).)

In response, Defendants emphasize that the USCIS's six-page letter addressed the Plaintiffs' evidence submitted in response to the NOID, including the above cited documentation, and still found that between the August 2008 interviews and August 2011

13

visit, there was substantial and convincing evidence that the parties did not enter into a bona fide marriage. Beginning with the identified discrepancies after the August 2008 interviews—in which both Andoh and Johnson had counsel present—the denial asserts that Plaintiffs' Response did not rebut most of the discrepancies identified. For instance, discrepancies about the parties' previous residence remained concerning when Johnson began living at the residence, who the leaseholder was, and the duration of the lease. (A.R. at 126.) Further, discrepancies remained as to how Johnson received her income and how the parties paid rent. The denial also noted times when the rebuttal seemed to be "an attempt to overcome the sworn statements that [Johnson and Andoh] each made after comparing the answers that Johnson provided to USCIS." (*Id.* at 127.) This included Johnson's sudden recollection that Andoh proposed to her in a restaurant, and not in the basement of his house as she had indicated during her interview.

As to the onsite visit, the denial highlighted the multiple discrepancies that remained even after Johnson's response to the NOID, including that (1) the parties alleged Doris slept on the couch yet there was no bedding on the couch or the box in which bedding was allegedly stored when the officers arrived at 5 a.m., (2) if Doris slept on the couch, why she and Andoh mislead the officers by stating that she shared the second bedroom with the roommate, George, and (3) Andoh stated that only Johnson stored clothing in their closet while Johnson asserted that she and Doris shared the closet. Accordingly, USCIS determined that "[c]redibility cannot be ascribed to either [Johnson] or [Andoh] with regard to these immigration proceedings." (A.R. at 128.) As to Plaintiffs' assertion that even if Andoh had an affair that does not change whether they entered into the marriage in good faith,

14

Defendants assert that first, the discrepancies existed during the 2008 interviews and second, Johnson and Andoh never presented this explanation to USCIS.

It is not the role of this Court to conduct a *de novo* review of whether substantial and probative evidence of a fraudulent or sham marriage exists in the record or substitute its own judgment for that of the United States Citizenship and Immigration Services. *State Farm,* 463 U.S. at 43, 103 S. Ct. 2856; *Defenders of Wildlife*, 762 F.3d at 396. USCIS weighed the documents the Plaintiffs submitted, the discrepancies in Andoh and Johnson's testimony during the August 2008 interviews, the visit in August of 2011, the attempt to resolve the discrepancies and explain away the several statements made by Andoh and Doris during the onsite visit, and determined that there was substantial evidence that the parties entered into the marriage for the purpose of circumventing immigration laws. *See Matter of Phillis,* 15 I. & N. Dec. 385, 387 (BIA 1975) (evidence that a petitioner and a beneficiary never shared a residence, and inconsistent statements made by the petitioner and beneficiary, typically support a finding of marriage fraud). The Administrative Record does not show that the USCIS relied on factors Congress intended it not to, failed to consider important evidence put forth by Plaintiffs, or rendered a decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Defenders of Wildlife*, 762 F.3d at 396 (quoting *State Farm*, 463 U.S. at 43, 103 S. Ct. 2856). Therefore, the Administrative Record does not show that the USCIS's decision to deny Johnson's I-130 Petition was arbitrary, capricious, or otherwise not in accordance with the law and Defendants' Motion for Summary Judgment is GRANTED as to this claim.

## II. Board of Immigration Appeal's November 23, 2012 Denial of Johnson's Appeal

Plaintiffs also assert that the Board of Immigration's denial of Johnson's appeal was an abuse of discretion in violation of the APA. Specifically, Plaintiffs assert that the statement contained on the Notice of Appeal "placed the BIA on notice that the plaintiff petitioner had submitted substantial documentation to establish the bona fides of her marriage." (ECF No. 89 at 34.) Therefore, Plaintiffs assert that the BIA was required to review the Plaintiffs' case and USCIS decision.

As Defendants note, however, the BIA denied Johnson's appeal on two grounds. First, the BIA dismissed the appeal for lack of jurisdiction as it appeared to have been initiated only by Andoh and not Johnson or her authorized representative. (A.R. at 306.) Second, the BIA explained that even it had jurisdiction, the appeal form did not sufficiently describe the factual or legal basis for the appeal. (*Id.*) The BIA cited 8 C.F.R. § 1003.1(d)(2)(i)(A) which states that a Board member or panel may summarily dismiss an appeal if the petitioner "fails to specify the reasons for the appeal on Form EOIR-26 or Form EOIR-29 (Notices of Appeal) or other document filed therewith." Specifically, 8 § 1003.3(b) requires that the reasons for appeal "identify the findings of fact, the conclusions of law, or both, that are being challenged." The Plaintiffs' statement that the marriage "was not for the purpose of conferring immigration benefits and evading immigration laws" and "[t]he documentation submitted by the couple to prove a bona fide marriage complied with the controlling regulation, 8 C.F.R. § 204.2(a)(1)(i)(B), and the I-130 petition instructions" did not identify any findings of fact or conclusions of law being challenged. *See Coreas v. Holder*, No. 12-1680, 526 Fed. App'x 322, 327 (4th Cir. June 6, 2013) (explaining that the

16

BIA could have properly dismissed an appeal that merely set forth that the immigration judge erred in granting an application for cancellation of removal for certain permanent residents).

Further, the BIA also cited 8 C.F.R. § 1003.1(d)(2)(i)(E) which provides an additional ground for summarily dismissing an appeal if the petitioner "indicates . . . that he or she will file a brief or statement in support of the appeal and, thereafter, does not file such brief or statement, or reasonably explain his or her failure to do so, within the time set for filing." As described above, although counsel had requested an extension of time to file a supporting brief, almost seven months passed from the time of appeal and no such brief was ever filed. This failure, coupled with the Notice of Appeal's failure to adequately notify the BIA of the reasons for the appeal, also warranted dismissal. *See Bovovo v. Ashcroft*, No. 03-1645, 120 Fed. App'x 936, 939 (4th Cir. Dec. 17, 2004) (explaining that summary dismissal is appropriate when a petitioner fails to file a brief as indicated and the notice of appeal does not contain a sufficient statement of reasons for the appeal). Accordingly, the Administrative Record does not show that the BIA's decision to deny Johnson's appeal was arbitrary, capricious, or otherwise not in accord with the law and Defendants' Motion for Summary Judgment is GRANTED as to this claim.

### III. Board of Immigration Appeals' September 6, 2013 Denial of Johnson's Motion to Reopen

Finally, Plaintiffs also challenge the BIA's decision to deny Johnson's Motion to Reopen.[9] 8 C.F.R. § 1003.2(a) states that "[t]he decision to grant or deny a motion to reopen

---

[9] Although Plaintiffs filed a Motion to Reopen and/or for Reconsideration, Plaintiffs' Motion for Summary Judgment is devoted exclusively to the BIA's decision to deny Johnson's Motion to Reopen. Accordingly,

or reconsider is within the discretion of the Board, subject to the restrictions of this section." Specific to a motion to reopen, § 1003.2(c) states that "[a] motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." The new evidence must be material *and* "not available and could not have been discovered or presented at the former hearing." § 1003.2(c)(1). The regulations further state that "[t]he Board has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief." § 1003.2(a). As the Fourth Circuit stated in *Chhetri v. Mukasey*, Nos. 07-1358, 07-1749, 258 Fed. App'x 594 (4th Cir. Dec. 18, 2007), "[a] denial of a motion to reopen must be reviewed with extreme deference, since immigration statutes do not contemplate reopening and the applicable regulations disfavor motions to reopen." 258 Fed. App'x at 595 (citing *A. M.A. v. INS*, 899 F.2d 304, 308 (4th Cir.1990) (en banc)).

Plaintiffs assert that the BIA's decision to deny the motion to reopen constituted an abuse of discretion because the motion presented for the first time documentation rebutting the USCIS' assertion concerning the Citibank statement failing to show that the account was used to pay any shared accounts. (ECF No. 37 at 41.) Plaintiffs argue that "[t]his motion [to reopen] was the **first** opportunity the plaintiff petitioner had to challenge the above quoted USCIS statement." (*Id.*) (emphasis in original). This argument fails for two reasons. First, Johnson always had the burden of establishing eligibility for Andoh, and accordingly, Plaintiffs' failure to submit the documents dating back to 2006 is not excused. Second, this

---

Plaintiffs abandoned any argument relating to the denial of the Motion for Reconsideration. *Dwyer v. Discover Financial Services*, No. WMN-15-2322, 2015 WL 7754369, at *1 n. 2 (D. Md. Dec. 2, 2015); *see also Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 525 (D. Md. 2013).

18

was not Plaintiffs' first opportunity to rebut the statement made by the USCIS. Rather, Plaintiffs had the opportunity to file a brief with Johnson's previous appeal but failed to do so. Accordingly, it was not arbitrary or capricious for the BIA to conclude that "[w]e will not reopen these visa petition proceedings where the proffered evidence appears to have been previously available and there is no explanation by the petitioner that the documents were unavailable." (A.R. at 578-79.) The BIA also did not abuse its discretion when it refused to consider the Plaintiffs' appeal brief because the BIA had granted Plaintiffs' counsel two extensions and further waited an additional few months before issuing a decision. (*Id.*) Therefore, Defendants are entitled to summary judgment on this claim and Defendants' Motion for Summary Judgment (ECF No. 94) is GRANTED while Plaintiffs' Motion for Summary Judgment (ECF No. 89) is DENIED.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment (ECF No. 89) is DENIED and Defendants' Motion for Summary Judgment (ECF No. 94) is GRANTED.

A separate order follows.

Dated: June 8, 2018

\_\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge